# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JULIE DUBUC,** | ) | |
| 20517 Sterling Bay Lane W, Apt. B. | ) | |
| Cornelius, North Carolina 28031, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| **COX COMMUNICATIONS** | ) | **JURY TRIAL DEMANDED** |
| **KANSAS, L.L.C.** | ) | |
| (Serve Resident Agent: | ) | |
|   Corporation Service Company | ) | |
|   2900 SW Wanamaker Dr., Suite 204 | ) | |
|   Topeka, Kansas 66614), | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Julie Dubuc states the following as her causes of action against Defendant Cox Communications Kansas, L.L.C.

1. Plaintiff Julie Dubuc is a Caucasian, female resident of Cornelius, Mecklenburg County, North Carolina.

2. Defendant Cox Communications Kansas, L.L.C. (Cox Communications) is a foreign limited liability company that conducts business in Sedgwick County, Kansas.

3. Defendant Cox Communications is an employer as defined and within the meaning of 42 U.S.C. § 2000e(b) of Title VII of the Civil Rights Act of 1964, as amended in 1991, and 42 U.S.C. § 12111(5) of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

4. Plaintiff is bringing these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.; 42 U.S.C. 1981; and the ADAAA, 28 U.S.C. § 12101, et. seq.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

6. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in Sedgwick County, Kansas in the District of Kansas within the meaning of 28 U.S.C. § 1391(b).

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging that Defendant engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, the allegations of Plaintiff's lawsuit would have arisen from the investigation of Plaintiff's Charge of Discrimination.

8. A Notice of Right to Sue has been issued by the Equal Employment Opportunity Commission and this action is being brought within ninety (90) days from the issuance of such Notice of Right to Sue.

9. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures in accordance with the law prior to instituting this lawsuit.

**ALLEGATIONS COMMON TO ALL COUNTS**

10. In June 2017, Plaintiff began working as a Director of Learning and Implementation for Cox Communications in Wichita, Kansas.

11. During Plaintiff's employment, her direct supervisor was Nancy Murphy (Murphy), the Executive Director of Learning and Workforce Capability, who worked in Atlanta, Georgia at Cox Communications' headquarters.

12. In or around September or October, 2018, Plaintiff's department underwent a restructuring, and Plaintiff had to reapply for her job.

13. Plaintiff interviewed with Murphy and Deborah Lawrence (Lawrence), Executive Director in Customer Support.

14. Plaintiff was the first person hired for the new organization in or around early November, and she was the only one of the original four Directors to be rehired.

15. Plaintiff's job title then changed to Director of Learning and Workforce Capability, and her job responsibilities also changed.

16. Prior to the restructure, Plaintiff a) supported the Central and Southeast regions; b) had three lines of business: residential sales, customer care (billing and technical support), and operations (field technicians) for Georgia, Florida, Louisiana, Idaho, Oklahoma, Kansas, Nebraska, and US and near shore vendor training for customer support; and c) had five direct reports: one sales manager, one care manager, two operations managers, and one outsource partner quality manager who supported customer care vendor training.

17. After the restructure, Plaintiff a) supported three lines of business: customer care, receivables management (collections), their Communication Centers (field technician dispatch centers) and US and near shore vendor training for customer support (their largest group with approximately 30,000 front line employees); b) had six direct reports, three training delivery managers supporting care, two senior learning advisors, and one outsource partner quality

manager; and c) went from supporting two regions and traveling a little over a week each month to supporting California, Arizona, Nebraska, Virginia, Oklahoma, Kansas, Louisiana, Nevada, Rhode Island, and their domestic and near shore vendor partners.

18. After the restructure, Plaintiff traveled for 28 weeks in 2019, and 2020 started off just as aggressively until the COVID-19 pandemic.

19. On or about March 2, 2020, Cox Communications sent Plaintiff on a business trip to Bogota, Columbia for the week.

20. On or about Thursday, March 5, 2020, Plaintiff was sitting side by side with a chat agent on the call center floor.

21. At the time, headsets were not being worn by the call center agents and music was being played on the call center floor.

22. Plaintiff noticed that the music being played on the call center floor contained offensive, discriminatory language, including racially offensive language and language that disparaged women.

23. Plaintiff texted Caren Andrade (Andrade), the Partner Manager on site, to inquire as to whether or not Andrade was listening to the music being played on the floor.

24. Shortly after Plaintiff texted Andrade, Andrade appeared on the call center floor and sat down a couple of rows from Plaintiff.

25. Plaintiff assumed that Andrade's presence on the floor was in response to her text message.

26. About ten to fifteen minutes after Andrade's arrival, the music stopped playing.

27. Later that day, Plaintiff asked Andrade if she had heard and addressed the offensive music that had been playing on the call center floor.

28. Andrade asked Plaintiff what she meant.

29. Plaintiff reported that the music being played on the floor contained language that was offensive and sexist against women and racially offensive.

30. The lyrics Plaintiff heard in her work environment included lyrics about the raping and killing of women, i.e. the use of phrases such as putting a bullet through her and a gun to her while I rape her and the use of the word "cunt" and lyrics using racially offensive language such as "nigger".

31. Plaintiff also reported that the lyrics contained foul language such as "fuck you," language regarding the use of drugs, and violent language about killing people.

32. Plaintiff reported her good faith belief to Andrade that the language in the music being played was offensive and that she did not believe that music containing such offensive lyrics should be allowed on the call center floor, especially given that several Cox Communication employees, including female employees and/or employees of color, were on site that week.

33. In response, Andrade told Plaintiff that she would address the matter with the leadership team.

34. At the time of her complaint of the offensive language, Defendant knew or should have known that its own policies required that employees bring such matters to the attention of management.

35. At the time of her complaint of the offensive language, Defendant had policies that prohibited harassment in the workplace including the direct or indirect use of racial or gender slurs.

36. At the time of her complaint of the offensive language, Defendant had policies that not only encouraged, but required employees to bring such issues to the attention of management.

37. At the time of her complaint of the offensive language, Defendant provided training to employees, including Plaintiff, about using such language in the workplace and when it occurred, that such language should be reported.

38. At the time of her complaint, Defendant believed it was an important business practice to train its employees and to encourage its employees to bring the use of offensive language (whether intentional or otherwise) to the attention of management.

39. At the time of her complaint, Defendant did not have a policy or train its employees that it would be a violation of internal policy to repeat the offensive language as part of the process of reporting that language.

40. At the time of her complaint, Defendant had never disciplined or terminated an employee for using an offensive word as part of their process of reporting discrimination or harassment or other violations of policy when the use of that language was part of a good faith effort to report and describe the offensive conduct that was heard/observed.

41. After her complaint, Plaintiff heard nothing further until she was questioned by Brenda Dodson (Dodson), Director, HR Business Partner at Cox Communications, on March 26, 2020 via Skype about the specifics of what Plaintiff reported to Andrade about the music during this business trip.

42. Plaintiff's supervisor Murphy was also present for this Skype meeting.

43. In response to Dodson's questions, Plaintiff again confirmed that she had reported that the music being played was offensive (and therefore a violation of company policy) for a

number of reasons, including because the lyrics contained the word "nigger" and language that disparaged women.

44. In response, Defendant immediately turned the questions upon Plaintiff.

45. For example, during this meeting, Dodson asked Plaintiff whether or not she had ever talked about the rewards she received from airlines and hotels related to her business travel.

46. This question appeared to be a veiled threat designed to attack Plaintiff, as there was no legitimate purpose to question her about this issue as part of the discussion about the improper use of racial slurs or sexually offensive language.

47. In response to her question, Plaintiff told Dodson that she had of course talked about rewards and she also reminded Dodson that other employees also engaged in these same types of discussions.

48. Dodson then questioned Plaintiff about her consumption of alcohol, including questioning Plaintiff about her alcohol consumption at a business event in 2017 and her purchase of a bottle of wine during a business trip in 2019.

49. Dodson represented to Plaintiff that others claimed that they noticed that Plaintiff's demeanor changed when she was drinking.

50. Again, the questions of alcohol use were unrelated to the purpose of a conversation about complaints of offensive conduct made pursuant to company policy, as there was no question or concern that Plaintiff was inebriated and/or "misheard" the language since the use of the offensive language in the music was not at issue.

51. It was again clear that during this conversation that was supposed to be about the use of offensive language, that Defendant had turned the conversation directly on Plaintiff.

52. Contrary to Cox Communications' veiled and offensive allegations, Plaintiff is not an alcoholic and does not have a drinking problem.

53. The fact that these questions were unrelated to the question of the good faith complaint of offensive language and were untrue or actions that other employees engaged in, the process of asking those question is evidence of retaliation and/or a per se act of retaliation.

54. On April 2, 2020, Murphy met with Plaintiff via Skype and terminated Plaintiff's employment.

55. Murphy gave Plaintiff two alleged reasons for her termination: 1) violating Cox Communications' Code of Conduct and 2) her use of the word "nigger" when reporting discrimination.

56. While it was unclear to Plaintiff whether the use of the word "nigger" or the alleged drinking problem or the discussion of rewards was the foundation for the Code of Conduct violation, they are all reasons that are directly responsive to her complaint of offensive behavior and evidence retaliation and/or per se acts of retaliation.

57. Prior to her report of discrimination in March 2020, Plaintiff had a strong performance record.

58. In 2019, Plaintiff met or exceeded expectations and received a "Successful Contribution" overall rating on her end of the year 2019 performance review.

59. On March 1, 2020, Plaintiff received an email from Murphy stating:

> It was so wonderful to be able to spend time with you in sunny California! You were fully present and as usual contributed greatly to all of the activities and conversations. Thank you for recommending Forbidden Island as an activity! You are so insightful and I have learned so much from you. I admire the way you selflessly invest in our team. We are all better because of it! I know for me that

translates into wanting to be a better leader. I am so grateful and blessed to know you.

60. A few days later, on March 6, 2020, Plaintiff received an email informing her that she was being recognized in the Amplifi Leader Discretionary promotion by Diana Tedrow, Director of Learning and Implementation for Cox Communications, in the category of Builds Relationships. Plaintiff also received similar Amplifi awards in 2019.

## COUNT I – RETALIATION

61. Plaintiff hereby incorporates by reference into Count I all allegations contained in all preceding paragraphs herein against Defendant.

62. As discussed above in paragraphs 21-33, Plaintiff engaged in protected activity, including reporting race and/or sex discrimination to Defendant's management and/or human resource employees.

63. As a result of and in retaliation for engaging in the protected activity described herein, Defendant terminated Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq., and 42 U.S.C. § 1981.

64. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

65. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

66. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## COUNT II – DISABILITY DISCRIMINATION

67. Plaintiff hereby incorporates by reference into Count I all allegations contained in all preceding paragraphs herein against Defendant.

68. Defendant perceived and/or regarded Plaintiff as suffering from a physical or mental impairment, i.e. alcoholism.

69. Defendant terminated Plaintiff's employment because Defendant perceived and/or regarded Plaintiff as suffering from a physical or mental impairment, i.e. alcoholism.

70. Defendant's actions, as alleged herein, constitute a violation or violations of the ADAAA, 42 U.S.C. § 12101, et seq., including 42 U.S.C. . § 12102(3)(A), and its accompanying regulations.

71. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career

potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

72. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

73. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and all allegations contained herein.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this matter take place in Kansas City, Kansas.

Respectfully submitted,

**EMPLOYEE & LABOR LAW GROUP**
**OF KANSAS CITY, LLC**

By: \_\_\_/s/Kristi L. Kingston_____
      Kristi L. Kingston, KS Bar No. 19126
      12920 Metcalf Avenue, Suite 180
      P.O. Box 25843
      Overland Park, KS  66225
      Ph:    (913) 286-5200
      Fax:   (913) 286-5201
      Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**